## PARKHILL v. TOWN OF BRIGHTON.

1. **Appeal to Supreme Court: TIME OF TAKING: HOW COMPUTED.**
Where judgment was rendered in the district court on the 30th day of March, and an appeal was perfected on the 30th day of the following September, the appeal was taken in time. For such purpose the reckoning is to be made from the day of the rendition of judgment to the corresponding day of the sixth month following.

2. **Cities and Towns: INJURY ON SIDEWALK: EVIDENCE: INSTRUCTION.**
In an action for an injury caused by stepping upon a loose board in a sidewalk, where the evidence as to the bad condition of the walk before and at the time of the injury was not contradicted, it was error to admit evidence, against the objection of defendant, that the walk was in bad condition six or seven months after the injury, and was then repaired by the town; and such error was not cured by an instruction directing the jury to consider such evidence only for the purpose of determining the condition of the walk at the precise time when the plaintiff was injured. BECK, J., *dissenting.*

3. ———: ———: **CONTRIBUTORY NEGLIGENCE: INSTRUCTIONS.** Where the plaintiff knew that a walk was in bad condition, and that on account of the darkness it was imprudent to walk over it, and that there was another good and safe walk over which she might go to her destination, it was contributory negligence for her to travel over the unsafe walk; and where there was evidence of such negligence, although the court instructed the jury properly as to the law of contributory negligence, but in language rather general, and not sufficiently intelligible to the non-professional mind, it was error to refuse an instruction asked by the defendant, which was adapted to the facts of the case, and was more easily understood by the jury. BECK, J., *dissenting*

*Appeal from Washington District Court.*

WEDNESDAY, JUNE 6.

ACTION for injuries alleged to have been sustained by reason of a defective sidewalk. There was a trial to a jury, and verdict and judgment were rendered for the plaintiff for $5,000. The defendant appeals.

*Dewey & Templin, McJunkin & Henderson,* and *H. W. Scofield,* for appellant.

*Ed. W. Stone* and *A. H. Patterson & Sons,* for appellee.

| | |
|---|---|
| 61 | 103 |
| 81 | 120 |
| 61 | 103 |
| 83 | 562 |
| 61 | 103 |
| 85 | 564 |
| 61 | 103 |
| 90 | 36 |
| 90 | 188 |
| 61 | 103 |
| 91 | 454 |
| 61 | 103 |
| 96 | 393 |
| 96 | 680 |
| 61 | 103 |
| 106 | 510 |
| 61 | 103 |
| d110 | 258 |
| e110 | 259 |
| 61 | 103 |
| f125 | 205 |
| 61 | 103 |
| 129 | 360 |
| 61 | 103 |
| h132 | 731 |
| f133 | 653 |
| 61 | 103 |
| 138 | 423 |

ADAMS, J.—I.   The appellee insists that the appeal was not taken within six months from the rendition of the judg- ment.   The fact appears to be that the judgment was rendered on the 30th day of March, and the appeal was taken on the 30th day of September following.   The theory that the time between the two dates is more than six months, rests upon the fact that March has thirty-one days.   Strictly considered, it must be admitted that the time included one day of March and the full six calendar months following.   But it is generally un- derstood that calendar months are to be computed by reckon- ing from a given day to a day of the corresponding number, where there is one.   No one could doubt that from the 29th day of March to the 29th day of September is precisely six calendar months, yet such time is of precisely the same length as from the 30th day of March to the 30th day of September.   The rule of reckoning from a given day to a day of the corresponding number is one so easily understood and applied, that we do not think that we should be justified in adopting any other.   The rule we adopt seems to be that of the commercial law.   *Ammidown v. Woodman*, 31 Me., 580.   We think that the appeal was taken within the proper time.

*1. APPEAL to supreme court: time of taking: how com- puted.*

II.   The fact respecting the alleged accident appears to be that in September, 1879, about eight o'clock in the even- ing, the plaintiff and her sister were walking upon the sidewalk in question, when the plaintiff step- ped upon a loose board or plank and fell.   The plaintiff and her sister both so testified, and we do not find that they are contradicted.   Notwithstanding this fact, the evidence respecting the condition of the walk was allowed to take a very wide scope.   The plaintiff was allowed to intro- duce evidence which, we think, must have been introduced mainly with the view of prejudicing the jury against the de- fendant.   She showed that in the spring of 1880, six or seven

*2. CITIES and towns: injury on sidewalk: evidence: instruction.*

Parkhill v. Town of Brighton.

months after the alleged accident, the walk was deemed by the town to need repairing. One Blackwood was introduced as a witness, who, after having testified that he was acquainted with the walk in 1878 and 1879, and that it was not very good; that it had some holes in it, and some loose boards—was asked a question in these words: "What was its condition in the spring of 1880, just before repaired?" To this he answered, against the objection of the defendant, that it was about the same thing. Other evidence of a similar character was admitted against the objection of the defendant. As touching this evidence, and for the purpose of limiting it in its application, the court instructed the jury in these words: "Evidence was admitted on the trial showing the original construction of the walk and its condition both before and after the time the injury is claimed to have been sustained; also that it was found necessary, soon thereafter, to reconstruct the walk; but this is only admitted as tending to show what was its actual condition at the precise time when the plaintiff claims to have been injured thereon, and it is for you to determine its weight on this point." The defendant assigns error both upon the admission of the evidence and the giving of the instruction.

The court very correctly appreciated that the evidence of the condition of the walk in the spring of 1880 was not admissible for the purpose of showing the general negligent character of the defendant as rendering it a proper subject of punishment. It undertook to apply the evidence to a proper object, and to prevent the jury from making any other application.

It often happens that evidence is admissible for one purpose, and no other, and is of such a character that there is danger that it will not be restricted in its application to its legitimate object. Where this is so, it cannot be excluded. The most that the party can require, against whom it is admitted, is, that the jury shall be properly cautioned. We

come then to the question as to whether the evidence respect-ing the repairs in the spring of 1880, and the condition of the walk immediately prior, was admissible, even for the purpose for which the court held that it was.

It is not to be denied, we think, that the defective condition of a sidewalk at the time of an alleged accident may sometimes be shown by showing its condition at a subsequent time. A sidewalk shown to be badly decayed on a given day could hardly be supposed to be sound the day or week previous. There are other defects which might be of such a character as to indicate that they had existed substantially for a considerable length of time. But where the time is such that the evidence in respect to the subsequent defective condition would more probably lead to a wrong inference than a correct one, it ought not to be admitted.

The accident is alleged to have occurred by reason of the fact that a certain board or plank was loose, and tipped up, and caused the plaintiff to fall. It is not shown whether it had become loose by reason of decay, or becoming broken, or unnailed. But it will be seen at once, that to whatever cause the defect might be due, the condition of the board or plank in the spring of 1880 would afford a very unreliable indication of its condition the September previous.

But there is another view which shows clearly to our minds that the testimony of Blackwood could have had no effect except to operate upon the prejudices of the jury. He had already, before the objectionable testimony was admitted, described the walk as it was in 1878 and 1879. He had covered the entire ground, so far as his testimony could go. He could add nothing to it that was proper to be added, by stating that the walk was in about the same condition in the spring of 1880. The substance of his testimony, taken together, was that the walk was bad at and before the time of the accident, and remained so six or seven months longer. If the walk was bad at the time of the accident, it was of no importance how long it remained so. Nor could the witness corroborate

his own testimony as to its condition at the time of the accident, by stating that it was in about the same condition in the spring of 1880.

Possibly it might be thought that the witness' testimony might be taken in connection with the evidence that the walk was repaired by the town in the spring of 1880. The court below seemed to think that the fact that the sidewalk was repaired was some evidence that it needed repairing. Now, if it needed repairing in the spring of 1880, and was in the same condition at the time of the accident, it cannot be denied that it needed repairing at the time of the accident. But, in our opinion, this whole subject of repairs in 1880 was foreign to the case. Making repairs at that time could have no significance except as an admission. Without going into the question as to whether a municipal corporation can make admissions in this way, it is sufficient to say that the admission would be only that repairs had become expedient. It would not be an admission that the sidewalk had become dangerous. Sidewalks are repaired partly in anticipation of their becoming dangerous, and partly to improve their convenience and appearance. Nothing more than that is necessarily indicated in regard to the motive for repairs. But the fact is not an admission even that it was expedient to repair earlier than the repair was made. Suppose the sidewalk did appear to be about the same. It was certainly six or seven months older, and it is shown that it was an old sidewalk.

The plaintiff contends that the testimony of Blackwood as to the walks remaining in the same condition after the accident was, if improperly admitted, without prejudice, because the defendant had proven the same fact.

Some of the defendant's witnesses spoke of the repairs in the spring of 1880. We do not find that the defendant proved that the sidewalk was in the same condition as at the time of the accident.

In admitting Blackwood's testimony, and similar testimony,

and in allowing the jury to apply it as in the instruction set out, we think that the court erred.

III.  The court refused an instruction asked by the defendant which was in these words: "If you find from the evidence that the plaintiff, at the time that she passed over the walk, knew that the walk was unsafe, and that it was imprudent to do so at that time, in consequence of the darkness or for any other cause, and, with this knowledge, she still persisted in passing over it, though there was another walk which she might have taken in going the direction which she desired to go, then her own negligence contributed to the injury, and she cannot recover."

3. ——: ——: contributory negligence: instructions.

The plaintiff had testified that the evening was dark, and that she knew that the walk "was in a terrible bad condition."

In view of this evidence it appears to us that the defendant was entitled to this instruction.

The court, it is true, gave an instruction on the subject of contributory negligence.  The jury was instructed that before the plaintiff could recover "she must show that she did not, by her negligence, contribute proximately to the original injury;" that "in using the walk she was held to the exercise of ordinary care;" that "if she knew of the hole in the walk, and of its decayed condition, then in passing over it she would be required to use the ordinary caution of persons under similar circumstances, with like knowledge."

But, if the plaintiff knew that it was imprudent to go over the walk, and there was another one by which she could have reached her destination, she was not excusable, we think, in attempting to walk cautiously over it in the darkness, but should have taken the other walk, and the jury should, we think, have been substantially so instructed as defendant asked.

The defendant was, we think, for another reason, entitled to have given the instruction asked.  The one given, intended to cover the ground, was not as clearly intelligible to the non-professional mind.  The jury was instructed that the plaint-

iff must show that she did not, by her negligence, contribute *proximately*, etc. The language used is proper enough in a legal treatise, or judicial opinion, but it is not to be commended in an instruction to a jury. The giving of the instruction cannot, perhaps, properly be assigned as error, but as the defendant asked an instruction which was more easily comprehensible, and as the point was a vital one, and one upon which it was very important that the jury should not be confused, we think it was error not to give the instruction.

Several other questions are presented which we do not determine. Most of them, probably, will not rise upon another trial, and as to the others we might not be agreed. For the errors pointed out the judgment must be

REVERSED.

BECK, J., dissenting as to the second and third points of the opinion.