### INJURY FROM A FALL ON A DANGEROUS SIDEWALK.

Circuit Court of Lucas County.

SMITH V. CITY OF TOLEDO.

Decided, March. 6, 1908.

*Defective Sidewalks—Degree of Care Required of Pedestrians—Negligence—Municipal Corporations.*

A pedestrian must exercise ordinary care both in the selection of a route and in its use after selecting it;  but a pedestrian on a city street, desiring to go from one residence to another on the same side of the street, is not negligent as a matter of law in attempting to pass over a defective sidewalk, where his only alternatives are to take a very circuitous route by another street or to cross through deep mud the street he is on to a more dangerous sidewalk on the other side.

*C. A. Aten* and *C. K. Friedman,* for plaintiff in error.
*C. S. Northup* and *C. H. Masters,* contra.

WILDMAN, J.; PARKER, J., and KINKEADE, J., concur.

Error to Lucas Common Pleas Court.

The plaintiff in error sued the city of Toledo for damages caused by its claimed negligence in permitting a sidewalk on the north side of Woodland avenue in said city to become and remain in a dangerous and defective condition. On October 8, 1906, the plaintiff, while passing along said sidewalk going from his residence to the residence of his daughter on the north side of said street, fell and was injured by stepping upon a decayed plank.

Upon the trial in the court below, at the close of plaintiff's evidence, the court arrested the testimony from the jury and directed a verdict for the defendant. For this and other claimed error this proceeding is brought here.

There is little, if any, dispute that the evidence offered and received in the court below tended to establish the negligence of the municipality. The sidewalk was an old one, which had been suffered to fall into decay. During the year 1903, a resolution had been passed by the city council for its repair. At some time, whether before or after the passage of this resolution does not very clearly appear, some repairs were made; but in the making of them, as the testimony indicates, the original materials were again used. The stringers and some of the planks had been weakened by reason of the lapse of years, and at some places in the sidewalk spaces had been made by the removal of planks. At the particular point where the injury was received, the sidewalk, according to the testimony of the plaintiff, appeared to be in fair condition. A plank broke under one of his feet, and he was precipitated forward and into an opening where two or three planks had been removed.

It is claimed on behalf of the defendant in error, in support of the ruling of the court below, that the danger was obvious; that the hazard was voluntarily encountered by the plaintiff; and that he was guilty of such contributory negligence as would bar recovery. Reliance is placed upon two or three recent decisions of the Supreme Court in cases of claimed defective sidewalks, and brief reference may be made to some of them. One of them

is the case of *Dayton* v. *Glaser*, 76 Ohio St., 471, in which a very familiar principle is enunciated in the syllabus, as follows:

"A municipal corporation is charged with the duty of keeping its streets free from nuisance and in a reasonably safe condition for travel in the usual modes, but it is not an insurer of the safety of persons using them, and when they are in that condition it is not chargeable with negligence, although an accident happens in the use of the streets."

The syllabus does not touch upon the question of contributory negligence of the plaintiff, and really affords not very much aid to our present inquiry; because, as I have already stated, there is not much dispute in the case at bar as to the asserted negligence of the defendant. The other question as to contributory negligence of the plaintiff in going upon and using the defective sidewalk is not touched in the decision.

Another case is that of *Norwalk* v. *Tuttle*, 73 Ohio St., 242, a case with which I have some familiarity, because on one of its trials I sat as common pleas judge. This is one of a class of cases growing out of an accumulation of ice and snow upon sidewalks in cities, rendering them more or less dangerous. Mr. Tuttle had slipped and fallen upon an icy sidewalk in Norwalk, and claimed that the city was negligent in permitting the sidewalk to be and remain in that condition. The Supreme Court held otherwise, announcing in the syllabus the result of its examination of the case. I quote:

"One who voluntarily goes upon a sidewalk of a city which is obviously, and by him known to be, in a dangerous condition, can not recover on account of injuries which he may thereby sustain, even if the negligence of the city is admitted or shown. (*Schaefler* v. *Sandusky*, 33 Ohio St., 246, and *Conneaut* v. *Naef*, 54 Ohio St., 529, approved and followed.)"

Counsel for the defendant in error and possibly the court below may have inferred from this broad statement in the syllabus that some departure was intended from the qualified rule which had theretofore been held in the state, to-wit, that one could not recover who went upon such a defective sidewalk with knowledge of its defective condition when he might easily have avoided such use of it by going by some other road to his destination.

Whether or not the court intended to abandon this qualification of the earlier rule becomes an important question in the present case, in view of the testimony of the plaintiff, Smith, corroborated to some extent by the testimony of another witness, that there was no other convenient route to his destination. I have said that his residence and that of his daughter were situated on the north side of Woodland avenue. He was going from his daughter's residence to his own, and to avoid the defective part of this sidewalk he would either have had to take a very circuitous route, greatly lengthening his journey, or would have been compelled to cross the street and then recross it, having passed the defective sidewalk. He testifies that along the north side of the sidewalk and only six or eight inches from it was a barbed wire fence or a picket fence with barbed wires strung along the top leaning toward the sidewalk; and on the other side of the sidewalk was a row of trees, some three trees, which were close to the sidewalk, indeed encroaching upon it; south of the trees was a ditch; the street was an unpaved one and at the time of this occurrence was in a very muddy condition; one of the witnesses testifying that a person walking along there would sink in at places almost to his knees, the soil being a mixture of clay and muck and sand. Mr. Smith testifies that the sidewalk on the opposite side of the street was worse, so far as the defective condition was concerned, than the sidewalk along which he was passing and on which he received his injury.

Now, assuming the correctness of these statements, and that the evidence tended to prove the facts asserted there can be no dispute, can it be said that the plaintiff failed to exercise that care which is ordinarily used by prudent people, and has the Supreme Court, in its somewhat general statements in two or three of the recent cases, laid down a rule which will hold a pedestrian to a higher degree of care than that which had been deemed to devolve upon persons of prudence, as ordinarily exercised by them?

To determine what is intended by the Supreme Court in the two cases to which I have referred, *Norwalk* v. *Tuttle, and Dayton* v. *Glaser, supra,* we may have recourse to the reference in

the opinions to the earlier cases.  As already said, it appears in the second paragraph of the syllabus in *Norwalk* v. *Tuttle, supra,* at page 242, that the cases of *Schaefler* v. *Sandusky,* 33 Ohio St., 246, and *Conneaut* v. *Naef,* 54 Ohio St., 529, are approved and followed.  *Dayton* v. *Glaser, supra,* does not refer to these earlier cases by titles or otherwise, but as already suggested this case bears rather upon the asserted negligence of municipal corporations than upon the claim of contributory negligence of a plaintiff, and so has little relevancy to our present inquiry.  I have in my hand *Schaefler* v. *Sandusky, supra,* and read from the syllabus:

"A person who voluntarily attempts to pass over a sidewalk of a city, which he knows to be dangerous by reason of ice upon it, which he might easily avoid, can not be regarded as exercising ordinary prudence, and therefore can not maintain an action against the city, to recover for injuries sustained by falling upon the ice, even if the city would otherwise have been liable."

The other case said to be approved and followed in *Norwalk* v. *Tuttle, supra,* is *Conneaut* v. *Naef, supra.*  In it is stated without qualification, in the syllabus, that:

"One who goes voluntarily upon an accumulation of ice on a walk of a village can not maintain an action against such village for a personal injury resulting to him, if the source of danger is plainly visible."

There is nothing said here as to the opportunity to avoid such accumulation of ice; but on pages 530 and 531, in the reasoning of Judge Shauck, speaking for the court, we find that reliance is placed upon *Schaefler* v. *Sandusky, supra,* in which that qualification is asserted.  He says, in speaking of a certain instruction and certain evidence with regard to it:

"The only question is whether it imposed upon the plaintiff, as a condition to recovery, a higher degree of care than the law requires.  If it did not, it is not objectionable because it stated the rule definitely instead of leaving it as a matter of inference to be drawn by the jury from a statement of general principles. This is determined in *Schaefler* v. *Sandusky,* 33 Ohio St., 246,

where it is held, as matter of law, that one who voluntarily attempts to pass over a sidewalk of a city, which he knows to be dangerous by reason of ice upon it, which he might easily avoid, can not maintain an action against the city to recover for injuries sustained by falling upon the ice. The precise question left undetermined by the case cited is whether in cases of this character a recovery will be denied on account of the plaintiff's failure to avoid a source of danger that is plainly visible as well as one that is actually known.''

The matter that was specially in the mind of the judge rendering the opinion, is the distinction between a claim that the plaintiff had knowledge of a dangerous condition and a claim of the obvious character of the dangerous condition, so that the inference ought to be drawn that he had knowledge, and the court is not paying very much attention to the other question as to whether he would be excused for going upon a sidewalk more or less dangerous by reason of defects, by his having another ready route to his destination. The adoption of the language of *Schaefler* v. *Sandusky, supra,* without criticism, leaves in the mind the inference that the court does not intend to change the rule therein expressed. It seems to be left in Ohio, as it is in other states, as a recognized rule that the plaintiff is held to the exercise of ordinary care, and that in the exercise of that ordinary care he must avoid choosing a dangerous route in preference to a safe one which he might take without inconvenience.

But in the case at bar we have evidence tending to show that he could not avoid the route selected without very great inconvenience to himself by going around upon another street, or possibly incurring greater danger by selecting a more dangerous sidewalk on the other side of the street. Surely the Supreme Court does not intend to hold him to the latter alternative. Several adjudications have been had in the circuit courts of the state touching the question. It was held in the case of *Ohlinger* v. *Toledo,* 20 C. C., 142, in the fourth paragraph of the syllabus, that:

''It is not negligence, as a matter of law, for a person to attempt to pass over a sidewalk which he knows to be out of re-

pair to the extent of having a board out of it.    Such person is
at liberty to use the walk, but must exercise such care as the
nature of the walk requires.''

Of course the pedestrian must exercise ordinary care both in
the selection of the route and in its use after he has selected it.
Smith testifies here that he did not deem the sidewalk danger-
ous at the point where he was injured; it had apparently been
repaired within seven years, perhaps, and possibly at a still
more recent time; that there was nothing in its appearance at
that particular place that indicated to his mind its danger.
He says, however, that he was walking with care and that he
was walking very slowly, because he was expecting some mem-
bers of his family to meet him on the sidewalk.

*Schaefler* v. *Sandusky, supra,* has been so often cited in other
jurisdictions as to become a somewhat leading case, and refer-
ence may be made to some of the cases in other states, where
the rule has been followed, sometimes perhaps with slight modi-
fications, but in the main as announced. Without express
citation of them I refer to the annotations of *Schaefler* v.
*Sandusky,* Cent. Anno. Ed.; and also invite attention to the
decision of our own court in *Toledo* v. *Fuller,* 7 C. C.—N. S.,
598. And the case cited by counsel in argument, *Kendall* v.
*Albia,* 73 Iowa, 241, 247 (34 N. W. Rep., 833), especially the
language on page 248. We think that the rule of contributory
negligence is not so exacting as counsel for the defendant in
error contend, and our judgment is that in view of the evi-
dence tending to disclose the difficulties and dangers attendant
upon the choice of another route than that by which the plaint-
iff traveled and on which he was injured, the court was in error
in arresting the case from the jury. The questions as to the
asserted negligence of either party should have been submitted
to the jury.

Another point, somewhat relied upon by counsel for plaintiff
in error, that the court erred in the exclusion of evidence, is not
well taken for two reasons—first, there is no formal offer of
proof on the face of the record in response to question asked;
and, second, plaintiff in error was not prejudiced thereby if

the court erred, because of the fact that the witness did testify quite fully upon this subject in another part of his examination.

The judgment of the court below will be reversed and the case remanded for a new trial.